IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

TASTEE TREATS, INC.,

        Plaintiff,

v.                        CIVIL ACTION NO. 5:07-cv-00338

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Tastee Treats, Inc.'s (Tastee Treats) Motion for Partial Summary Judgment [Docket 46] and Defendant United States Fidelity and Guarantee Company's (USF&G) Motion for Summary Judgment [Docket 44]. For the reasons stated herein, the Court **GRANTS** Tastee Treats' Motion for Partial Summary Judgment and **DENIES** USF&G's Motion for Summary Judgment.

*I. BACKGROUND*

In their cross-motions, the parties move for summary judgment on Count I of Tastee Treats' Complaint, in which Tastee Treats seeks a declaratory judgment that it has a right to insurance coverage under the property and casualty insurance policy (the Policy) that it purchased from USF&G.[1] The facts which are relevant to the parties' cross-motions are undisputed.

---

[1] This Memorandum Opinion and Order does not address Tastee Treats' claim for damages or the remaining counts of its Complaint for breach of contract (Count II), and breach of the duty of good faith and fair dealing (Count III).

*A. Factual Background*

Tastee Treats is a West Virginia corporation that owns and operates a Dairy Queen restaurant in Huntington, West Virginia. The property on which the building is situated is owned by the City of Huntington and leased to Tastee Treats. The Dairy Queen lot is part of a larger tract of land owned by Huntington (the Huntington Lot).

Two 96-inch culverts run approximately 30 feet beneath the Huntington Lot and convey water from a tributary. Although not directly underneath the Dairy Queen, the culverts are very close to the store. According to the parties' expert witnesses, the culverts collapsed in 2006, which caused the dirt between the culverts and the Dairy Queen to fall into the void created by the culverts' collapse. As the dirt filled into the collapsed culverts, the area beneath the Dairy Queen became unstable, resulting in damage to the building and its surrounding parking lot.

On August 2, 2006, Tastee Treats filed a claim with USF&G for property damage and business interruption pursuant to the Policy. After an investigation, USF&G denied Tastee Treats' claim based on certain language in the Policy which it believes excludes insurance coverage in this circumstance.

*B. Insurance Policy*

Under the Policy, USF&G "will pay for direct physical loss to Covered Property . . . caused by or resulting from any Covered Cause of Loss." [Docket 44-2 at 14.] This is known as an "all-risk policy," wherein "recovery is allowed for all losses arising from any fortuitous cause, unless the policy contains an express provision excluding the loss from coverage." *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 7 (1998). "Covered Property" includes, among other things, "buildings" and "outdoor fixtures." [Docket 44-2 at 14.] A "Covered Cause of Loss" means "[r]isks of direct physical loss unless the loss to Covered Property is excluded" under the Policy. [Docket

2

44-2 at 17.] Tastee Treats argues that because its Dairy Queen building suffered direct physical loss which was caused by the collapsed culverts, USF&G is liable for that damage under the Policy. In response, USF&G argues that the damage to the Dairy Queen is excluded from coverage under the Policy according to two exclusions: the Earth Movement exclusion and the Negligent Work exclusion. The Earth Movement exclusion, including its lead-in clause, provides that USF&G:

> will not pay for loss to Covered Property caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. Unless otherwise stated, the following exclusions apply to all SECTION 1 - Coverages.
> . . .
> Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence, or earth sinking, rising, or shifting. But if earth movement results in fire or explosion, we will pay for the loss caused by that fire or explosion.

[Docket 44-2 at 17-18.]

> The Negligent Work exclusion, including its lead-in clause, provides that USF&G:
>
> will not pay for the loss caused by or resulting from any of the causes of loss listed in SECTION I. C. 4. a. through 4. c. below. But if an excluded cause of loss that is listed in SECTION I. C. 4. a. through 4. c. below results in a Covered Cause of Loss, we will pay for the loss caused by that Covered Cause of Loss. The following applies to all SECTION I - Coverages.
> . . .
> b. Negligent Work. Faulty, inadequate or defective:
> (1)  Planning, zoning, development, surveying, siting;
> (2)  Designing, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> (3)  Materials used in repair, construction, renovation or remodeling; or
> (4)  Maintenance.

[Docket 44-2 at 21.]

*C. Procedural History*

On April 27, 2007, Tastee Treats filed this action in the Circuit Court of Raleigh County, West Virginia. USF&G subsequently removed the action to this Court on May 24, 2007, citing diversity of citizenship, 28 U.S.C. § 1332, as the jurisdictional basis. USF&G is a Maryland

corporation with its principal place of business in Maryland. The amount in controversy requirement of § 1332 would appear to be satisfied in this case.

Following discovery, the parties filed the instant cross-motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *Am. Legion Post v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A mere scintilla of proof, however, will not suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celetex Corp.*, 477 U.S. at 323.

The moving party bears the burden to show that there is no genuine issue of material fact, and the court "must assess the evidence as forecast in the documentary materials . . . in the light most favorable to the party opposing the motion." *Charbonnages de Fr. v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). In this case, both parties have moved for summary judgment. Cross-motions for summary judgment are given the same standard of review and the court will "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each

under the Rule 56 standard." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## III. DISCUSSION

In the parties' cross-motions for summary judgment, they agree that no genuine issues of material fact exist with regard to whether the damage to the Dairy Queen is covered under the Policy. Thus, whether coverage exists is an issue of law to be determined by the Court.

In a declaratory judgment action where jurisdiction is based on diversity of citizenship, interpretation of the insurance policy at issue is governed by West Virginia law. *First Fin. Ins. Co. v. Crossroads Lounge*, 140 F. Supp. 2d 686, 694 (S.D. W. Va. 2001) (Chambers, J.). As the Fourth Circuit has recently stated:

> Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue. *See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.,* 296 F.3d 308, 312 (4th Cir. 2002). Accordingly, where there is West Virginia law addressing a particular question, we will follow it. But if the West Virginia courts have not addressed an issue, we will look to generally accepted principles of insurance law, because we believe that West Virginia's Supreme Court of Appeals would adopt those principles as its own.

*Horace Mann Ins. Co. v. Gen. Star Nat'l. Ins. Co.*, 514 F.3d. 327, 329 (4th Cir. 2008).

The particular question before the Court is whether the Policy's Earth Movement exclusion or the Negligent Work exclusion negate coverage under the facts of this case. Again, it is undisputed that the culverts near the Dairy Queen collapsed and caused the dirt beneath the Dairy Queen to shift, thereby damaging the building. Tastee Treats argues that the damage was "caused by" the collapsed culverts, and is therefore covered.[2] USF&G agrees that the collapsed culverts

---

[2] USF&G does not dispute that a collapsed culvert is a covered event under the Policy.

caused the dirt beneath the Dairy Queen to shift, but argues that the Policy negates coverage in any case where moving earth causes damage.

### A. Earth Movement exclusion

The Earth Movement exclusion set forth above contains two parts: the exclusion itself and its lead-in clause, otherwise known as a "concurrent causation clause[.]" *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 537 (D. Md. 2008). The West Virginia Supreme Court of Appeals had the opportunity to consider similar provisions in *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (1998). In *Murray*, the insureds' homes were damaged by rocks falling from the highwall of a forty-year-old abandoned rock quarry situated next to their residences. Several large boulders and rocks fell off the highwall and onto the houses, causing extensive damage. The insurers, Allstate and State Farm, argued that the earth movement exclusions in the relevant insurance policies excluded coverage for damage caused by falling rocks.[3] The insureds argued that the damage to their homes was caused by the negligent creation of the highwall and its negligent maintenance, two events that were covered by the insurance policies. In construing the earth movement exclusions at issue in that case, the *Murray* court found that:

---

[3] The Allstate policy excluded coverage for losses resulting from:

> Earth movement, including, but not limited to, earthquake, volcanic eruption, landslide, subsidence, mud flow, sinkhole, erosion, or the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

The State Farm policy excluded coverage for losses resulting from:

> Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion.

*Murray*, 509 S.E.2d at 8.

> On the one hand, the exclusions cited in the defendants' policies could bar coverage for solely *natural* events such as earthquakes, volcanic eruptions, and sinkholes.
>
> On the other hand, the same exclusions refer to events which could be *man-made,* such as subsidence or earth movement caused by equipment or a broken water line. Or, as alleged in this case, earth movement could be caused by *both man and nature* over a period of time, such as landslides, mudflows, or the earth sinking, shifting, or settling. Because the policy language is reasonably susceptible to different meanings, we believe that the earth movement exclusions in the insurance policies at issue are ambiguous, and must have a more limited meaning than that assigned to it by the defendants.

*Murray*, 509 S.E.2d at 9 (emphasis in original). The *Murray* court then went on to hold that:

> Examining the exclusionary terms used by Allstate and State Farm in their context, and applying the rule that ambiguities must be resolved in favor of the insured, we conclude that both earth movement exclusions must be read to refer only to phenomena resulting from natural, rather than man-made, forces.
>
> Therefore, when an earth movement exclusion in an insurance policy contains terms not otherwise defined in the policy, and the terms of the exclusion relate to natural events (such as earthquakes or volcanic eruptions), which events, in some instances, may also be attributed to a combination of natural and man-made causes (such as landslides, subsidence or erosion), the terms of the exclusion must be read together and limited to exclude naturally-occurring events rather than man-made events.

*Murray*, 509 S.E.2d at 10.

The Court notes that the *Murray* court's distinction between naturally-occurring and man-made events would not apply to the Earth Movement exclusion in this case because it includes an exclusion for "mine subsidence," which would appear to be a man-made event. While a collapsed culvert may be a similar geological event to mine subsidence, it is not, however, excluded from coverage by the Policy. Thus, under the Earth Movement exclusion the damage to the Dairy Queen could be seen as being caused by both an excluded event (*i.e.*, moving earth) and a non-excluded event (*i.e.*, collapsing culverts). Accordingly, the Court **FINDS** that whether coverage for the Dairy Queen's damage is excluded under the Earth Movement provision reveals an ambiguity in the

7

policy,[4] and that this language must be read to exclude coverage for earth movement, but not collapsed culverts.

According to *Murray*, "[w]hen a loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the proximate cause of the loss." *Murray*, 509 S.E.2d at 11. In making this determination, the *Murray* court adopted the "efficient proximate cause rule." *Bao*, 535 F. Supp. 2d at 537. The *Murray* court articulated this doctrine as follows:

> When examining whether coverage exists for a loss under a first-party insurance policy when the loss is caused by a combination of covered and specifically excluded risks, the loss is covered by the policy if the covered risk was the efficient proximate cause of the loss. No coverage exists for a loss if the covered risk was only a remote cause of the loss, or conversely, if the excluded risk was the efficient proximate cause of the loss. The efficient proximate cause is the risk that sets others in motion. It is not necessarily the last act in a chain of events, nor is it the triggering cause. The efficient proximate cause doctrine looks to the quality of the links in the chain of causation. The efficient proximate cause is the predominating cause of the loss.

Syl. pt. 7, *Murray*, 509 S.E.2d 1. Finally, the *Murray* court held that "whichever of these events was the efficient proximate cause of the [insureds'] losses is a question for the finder of fact." *Id.* at 13. In its response brief, however, USF&G does not dispute Tastee Treats' contention that the collapsed culverts were the efficient proximate cause of the damage to the Dairy Queen. Rather, USF&G argues that the efficient proximate cause doctrine is not controlling in this case because the Concurrent Causation Clause "expressly excludes any cause or event which would contribute concurrently or in any sequence to the loss." [Docket 48 at 4.]

---

[4] The presence of an ambiguity in this case is a close call. However, in light of *Murrary*, this Court believes that the West Virginia Supreme Court of Appeals would likewise find an ambiguity in the instant policy. *See Private Mortgage*, 296 F.3d at 312.

*B. Concurrent Causation Clause*

In *Murray*, State Farm argued that its concurrent causation clause[5] defeated the efficient proximate cause doctrine because "if earth movement in any way contributes to a loss, regardless of the proximate cause, then under the [concurrent causation] clause the entire loss is excluded from coverage under the all-risk policy." *Murray*, 509 S.E.2d at 14. The *Murray* court rejected this argument, holding that "when an insurance carrier chooses to insure against a loss proximately caused by a particular peril, it may not rely on the mere concurrence of an excluded peril to deny coverage. The excluded peril must itself be the efficient proximate cause of the loss." *Id.* at 15.

Although the concurrent causation clauses in *Murray* and the instant cause contain different language, *Murray* has clearly foreclosed USF&G's argument that its Earth Movement exclusion and Concurrent Causation Clause operate to deny coverage when a covered event is the efficient proximate cause of the loss. Therefore, the Court **HOLDS** that the Earth Movement exclusion does not exclude coverage for the damage to the Dairy Queen because the efficient proximate cause of the damage (*i.e.*, the collapsed culverts) was covered.

*C. Negligent Work exclusion*

USF&G finally argues that the Negligent Work exclusion excludes coverage because "the negligent maintenance of the culverts by the city of Huntington led to the collapse of the culverts."

---

[5] State Farm's concurrent causation clause in *Murray* stated that:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[.]

[Docket 48 at 6.] As noted above, the Negligent Work exclusion excludes coverage for faulty, inadequate or defective maintenance. In support of its argument, USF&G cites Tastee Treats' expert, who opined that: "Improper monitoring, repair and maintenance by the owner of these conduits allowed the pipes' condition to progress to a dire state of disrepair." [Docket 48 at 6-7.]

In establishing that the culverts' collapse was caused by the City of Huntington's negligent maintenance, USF&G "has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 6, *Murray*, 509 S.E.2d 1. The record in this case is woefully underdeveloped for the Court to make a factual finding that the culverts were inadequately maintained. Rather, it appears that Tastee Treats' expert, Gregory Boso, concluded that the culverts must have been inadequately maintained with no factual basis other than knowing that the owner of the culverts was the City of Huntington. [*See* Docket 46-4 at 7 and Docket 70-4 at 35.] The Court is not required to accept expert opinions not "based on sufficient facts," and does not accept Mr. Boso's opinion that the City of Huntington inadequately maintained the culverts. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993) (expert must be based on "more than subjective belief or unsupported speculation."). Accordingly, the Court **FINDS** that USF&G has not met its burden of establishing that the Negligent Work exclusion applies in this case.

Additionally, the Court notes that the lead-in clause to the Negligent Work exclusion states that *"*if an excluded cause of loss [including negligent work] results in a Covered Cause of Loss, we will pay for the loss caused by that Covered Cause of Loss." Thus, even if there was sufficient evidence for USF&G to argue that negligent maintenance contributed to the damage to the Dairy Queen, it is undisputed that it would have contributed to the culvert collapse, the efficient proximate cause of the loss. Since, as such, the culvert collapse is a Covered Cause of Loss, the exclusion would not apply, by its own terms.

As the Court previously found that the collapsed culverts were the efficient proximate cause of the damage to the Dairy Queen and that this event is covered under the Policy, USF&G must pay for the damage caused by the collapsed culverts.[6]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Tastee Treats' Motion for Partial Summary Judgment [Docket 46] and **DENIES** USF&G's Motion for Summary Judgment [Docket 44]. Accordingly, the Court **GRANTS** Tastee Treats' request for declaratory relief (Count I of the Complaint) and **FINDS** that the damage to the Dairy Queen is covered under the Policy.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: July 21, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6] Even if USF&G had argued that inadequate maintenance was the efficient proximate cause of the damage to the Dairy Queen, that argument would be factually unsupported by the record.