IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

TASTEE TREATS, INC.,

    Plaintiff,

v.              CIVIL ACTION NO. 5:07-cv-00338

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant United States Fidelity and Guarantee Company's (USF&G) Motion in Limine and/or for Judgment as a Matter of Law [Docket 86] and USF&G's Supplemental Motion in Limine and/or for Judgment as a Matter of Law [Docket 150]. The Court construes both of USF&G's motions for judgment as a matter of law as motions for summary judgment. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** both summary judgment motions.

*I. BACKGROUND*

In its first motion for summary judgment, USF&G requests that the Court either exclude several issues from trial or resolve the issues in USF&G's favor. Those issues include: (1) whether any loss of business suffered by Tastee Treats, Inc. ("Tastee Treats") falls within the insurance policy's ("the Policy") "Business Income" provision; (2) whether Tastee Treats may make a claim for "Extra Expense" or "Debris Removal" under those provisions of the Policy; (3) whether demolition of the building is necessary or covered by the Policy; (4) whether and what provisions of West Virginia's *Hayseeds* case apply; and (5) whether any bad faith damages are warranted in

this case. In its supplemental motion for summary judgment, USF&G argues that, in light of a settlement reached between Tastee Treats and other parties to a parallel state lawsuit, Tastee Treats has no insurable interest in the covered property. As a consequence, USF&G states, it is no longer obligated under the Policy to pay Tastee Treats for damage to the Dairy Queen building. Furthermore, USF&G contends, because Tastee Treats has relinquished its leasehold in the building, the company will suffer no injury from the possible demolition of the Dairy Queen building. In response, Tastee Treats argues that the Policy covers construction of a replacement building and, in any case, it is entitled to recover for financial injury caused by the damaged culverts prior to reaching settlement.

*A. Factual Background*

Tastee Treats is a West Virginia corporation that owned and operated a Dairy Queen restaurant in Huntington, West Virginia. According to Tastee Treats, the Dairy Queen ceased operations in March of 2008. The property on which the building is situated is owned by the City of Huntington and was leased to Tastee Treats. The Dairy Queen lot is part of a larger tract of land owned by Huntington (the Huntington Lot).

Two 96-inch culverts run approximately 30 feet beneath the Huntington Lot and convey water from a tributary. Although not directly underneath the Dairy Queen, the culverts are very close to the store. According to the parties' expert witnesses, the culverts collapsed in early 2006, which caused the dirt between the culverts and the Dairy Queen to fall into the void created by the culverts' collapse. As the dirt filled into the collapsed culverts, the area beneath the Dairy Queen became unstable, resulting in damage to the building and its surrounding parking lot.

On August 2, 2006, Tastee Treats filed a claim with USF&G for property damage and business interruption pursuant to the Policy. After an investigation, USF&G denied Tastee Treats'

claim based on certain language in the Policy which it believed to exclude insurance coverage in this circumstance.

*B. Insurance Policy*

Under the Policy, USF&G "will pay for direct physical loss to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Docket 44-2 at 14.) This is known as an "all-risk policy," wherein "recovery is allowed for all losses arising from any fortuitous cause, unless the Policy contains an express provision excluding the loss from coverage." *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 7 (W. Va. 1998). "Covered Property" includes, among other things, "buildings" and "outdoor fixtures." (Docket 44-2 at 14.) A "Covered Cause of Loss" means "[r]isks of direct physical loss unless the loss to Covered Property is excluded" under the Policy. (Docket 44-2 at 17.) The Court previously held that damage to the Dairy Queen building is covered under the policy, and neither the Earth Movement exclusion nor the Negligent Work exclusion prevent recovery. (Docket 78 at 10-11.) That opinion resolved Count I of Tastee Treats' complaint,[1] but it did not address the availability of lost business income, recoverable extra expense, or other miscellaneous coverage under the policy. Those matters, as well as others, are at issue in the current motions.

*C. Procedural History*

On April 27, 2007, Tastee Treats filed this action in the Circuit Court of Raleigh County, West Virginia. USF&G subsequently removed the action to this Court on May 24, 2007, citing diversity of citizenship, 28 U.S.C. § 1332, as the jurisdictional basis. USF&G is a Maryland

---

[1] Count I of the complaint seeks a declaratory judgment on the rights and obligations of the parties under the insurance policy. Tastee Treats' complaint also asserts claims for breach of contract (Count II), breach of the duty of good faith and fair dealing (Count III), and violation of the West Virginia Unfair Trade Practices Act (Count IV). In the Pretrial Order [Docket 73], the Court accepted Tastee Treats' statement that it no longer intended to pursue Count IV.

3

corporation with its principal place of business in Maryland. The amount in controversy requirement of § 1332 would appear to be satisfied in this case.

Following discovery, USF&G filed its original motion for summary judgment on August 20, 2008. A crossfire of motions ensued until the case was stayed on January 7, 2009, pending resolution of a parallel state court case. Anticipating a settlement in the state court case, the parties sought reinstatement of the case before this Court. After discussions with the parties, the Court lifted the stay on July 2, 2010, and ordered that USF&G file additional briefing. Pursuant to that order, on August 16, 2010, USF&G filed its supplemental motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *Am. Legion Post v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A mere scintilla of proof, however, will not suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celetex Corp.*, 477 U.S. at 323. The moving party bears the burden to show that there is no genuine issue of material fact, and the court "must assess the

evidence as forecast in the documentary materials . . . in the light most favorable to the party opposing the motion." *Charbonnages de Fr. v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

## III. DISCUSSION

Regarding USF&G's motions for summary judgment, the parties are in agreement that the culverts near the Dairy Queen collapsed and caused the dirt beneath the Dairy Queen to shift, thereby damaging the building. The parties disagree only about the proper construction of the Policy and the damages owed to Tastee Treats thereunder. Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law for the Court to decide. *See Keefer v. Ferrell*, 655 S.E.2d 94, 99 (W. Va. 2007).

Where jurisdiction is based on diversity of citizenship, interpretation of the insurance policy at issue is governed by state law. *First Fin. Ins. Co. v. Crossroads Lounge*, 140 F. Supp. 2d 686, 694 (S.D. W. Va. 2001) (Chambers, J.). As the Fourth Circuit has recently stated:

> Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue. *See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.,* 296 F.3d 308, 312 (4th Cir. 2002). Accordingly, where there is West Virginia law addressing a particular question, we will follow it. But if the West Virginia courts have not addressed an issue, we will look to generally accepted principles of insurance law, because we believe that West Virginia's Supreme Court of Appeals would adopt those principles as its own.

*Horace Mann Ins. Co. v. Gen. Star Nat'l. Ins. Co.*, 514 F.3d. 327, 329 (4th Cir. 2008).

*A. Demolition and Reconstruction Costs*

The Court's July 21, 2008, opinion found coverage under the Policy and held that USF&G must pay for damage to the Dairy Queen building caused by the collapsed culverts. (Docket 78 at 11.) At that time, Tastee Treats maintained that complete demolition of the Dairy Queen was necessary. Since then, Tastee Treats entered into a settlement agreement with the City of

5

Huntington, the lessor of the land, discharging the lease and terminating its state court action against Kimco and the City of Huntington for $650,000. (Docket 151-1.) Notably, the state court action that was dismissed by the settlement agreement alleged breach of contract for failing to maintain the leased premises and negligence on the part of Huntington. (Docket 95-1 at 4-7.) The state court complaint sought damages to "adequately compensate [Tastee Treats] for physical damages to its business premises, as well as structures and landscaping thereon." (*Id.* at 7.) Despite the settlement and corresponding release, including the termination of its lease, Tastee Treats maintains that USF&G is required under the Policy to reimburse Tastee Treats for the (possible) future demolition of the Dairy Queen or, alternatively, construct a replacement building at a location of its choosing.

In support of this contention, Tastee Treats cites a subsection of the Policy which states:

(2) If the building property is covered on a replacement cost basis or on a functional replacement cost basis and the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

    (a) The amount you actually spend to repair, rebuild, or reconstruct the building, but not more than the amount it would cost to have you restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured if you rebuild on another premises; or

    (b) The Limit of Insurance shown in the Property Coverage part Declarations as applicable to the covered Building property.

(Policy at 6.) From this subsection, and because the Dairy Queen building was insured on a replacement cost basis, Tastee Treats argues that the Policy obligates USF&G to pay for a replacement building. Tastee Treats reads this subsection out of context. The larger section of the Policy, section I.A.1.g., is titled "Undamaged Portion of the Building," and it provides coverage for any undamaged portions of the insured building that must be demolished or are otherwise devalued *because of an ordinance or law in force at the time of the loss*.

It is axiomatic under West Virginia law that the entire insurance Policy, and each section of the Policy, must be read together. *See Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 900 (W. Va. 2009). Reading section I.A.1.g. as a whole, then, it is clear that a replacement building is required under that section only when demolition or devaluation results from the enforcement of an ordinance or law. Subsection g.(1) details the general coverage under that section:

> If a Covered Cause of Loss occurs to covered Building Property . . . we will pay for the loss in value of the undamaged portion of the building as a consequence of enforcement of any ordinance or law which is in force at the time of loss that . . . [r]equires demolition of parts of the same property . . . or . . . [r]egulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises.

(Policy at 5.) Subsections g.(2) and g.(3), one of which is cited by Tastee Treats in support of its claim for replacement costs, simply detail the amounts USF&G is obligated to pay if an ordinance or law requires demolition of the damaged building or increased repair or reconstruction costs. Specifically, subsection g.(2) details the maximum payout if the property is insured on a replacement cost basis and the property is repaired or replaced.[2] Subsection g.(3) sets forth the maximum payout if the property is either (1) insured on a replacement cost basis and the property is *not* repaired or replaced or (2) insured on an actual cash value basis.[3] The following subsection, g.(4), carves out

---

[2] Subsection g.(2) provides:

> If the Building property is covered on a replacement cost basis or on a functional replacement cost basis and the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of . . . [t]he amount you actually spend to repair, rebuild or reconstruct the building . . . or [t]he Limit of Insurance shown in the Property Coverage Part Declarations . . . .

(Policy at 6.)

[3] Subsection g.(3) provides:

(continued...)

7

exceptions to the general coverage contained in subsection g.(1), whereby USF&G is not required to pay anything (1) if the insured was required to comply with the ordinance or law prior to the loss or (2) if the insured failed to comply with the ordinance or law prior to the loss. (Policy at 6.) Reading section I.A.1.g. in its entirety, then, it is clear that the recovery Tastee Treats seeks is available only if a law or ordinance requires demolition of the Dairy Queen building. *See Trinity Baptist Church v. GuideOne Elite Ins. Co.*, No. 06-1201-D, 2009 WL 2972502, at *1 (W.D. Okla. Sept. 14, 2009) (referring to a similar insurance policy clause as a "code enforcement" provision, which covers "the increased cost attributable to the enforcement of building ordinances or laws").

This particular USF&G insurance clause has been interpreted similarly by another district court. In *Medical Plaza, LLC v. USF&G*, the insured medical facility was partially destroyed by Hurricane Katrina. No. 1:07cv98-LTS-RHW, 2008 WL 4335572, at *1 (S.D. Miss. Sept. 17, 2008). Following the loss, the insured demolished the remaining portion of its medical structure. *Id.* In seeking coverage for the portion of the building that it demolished following the hurricane, the plaintiff argued that emergency debris-removal laws in New Orleans compelled the demolition. *Id.* at *4. The district court agreed and held that the plaintiff could recover for the demolition because the facility was removed as a consequence of the emergency removal ordinances, which were in effect at the time of the loss. *Id.* at *6. In making its holding, the district court in *Medical Plaza*

---

³(...continued)

> If the Building property is covered on a replacement cost basis and the property is not repaired or replaced, or if the Building property is covered on an actual cash value basis, we will not pay more than the lesser of . . . [t]he actual cash value of the building at the time of loss; or . . . [t]he Limit of Insurance shown in the Property Coverage Part Declarations as applicable to the covered Building property.

(Policy at 6.)

8

stated that, under the policy provision at issue in that case *and in this case*, "the demolition of part of the building must be 'a consequence of enforcement of any ordinance or law which is in force at the time of loss . . . .'" *Id.* at *3 (citing the insurance policy). The Court is aware of no such law or ordinance in this case, and Tastee Treats does not argue that such a law or ordinance exists. Thus, section I.A.1.g. in inapposite.

Furthermore, by terminating its leasehold in the property and Dairy Queen building, Tastee Treats eliminated any insurable interest it had. *See Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 245 (4th Cir. 2007) (tenant has insurable interest in building where it stands to suffer loss if building is damaged or destroyed). The disputed policy provides property insurance for the Dairy Queen building. The purpose of property insurance is to indemnify the insured for loss, and, as such, the insured must have "such a legal relation to the property insured [so] that its destruction will entail upon him a pecuniary loss or liability." *Shaffer v. Calvert Fire Ins. Co.*, 62 S.E.2d 699, 703 (W. Va. 1950). To allow an insured to recover under the contract without an insurable interest "would be to go against the spirit and purpose of the contract, as well as against public policy." *Fire Ass'n of Phila. v. Ward*, 42 S.E.2d 713, 716 (W. Va. 1947); *see also Scott v. Dixie Fire Ins. Co.*, 74 S.E. 659, 660 (W. Va. 1912) ("Whoever may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject of insurance . . . has insurable interest."); *Murdock v. Franlin Ins. Co.*, 10 S.E. 777, 778 (W. Va. 1889). A party to the insurance contract has an insurable interest in the subject matter insured "when he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." *Id.* (quoting 44 C.J.S. *Insurance* §175b (1947)). Tastee Treats stands to lose nothing from the possible future demolition of the Dairy Queen building post-settlement. It is plain that Tastee Treats' financial

position will remain constant whether internal repairs are made to the culverts and the Dairy Queen building remains standing or external repairs are required and the building is demolished. In other words, even if the Court interpreted the Policy as requiring USF&G to construct a replacement building—which it does not under these circumstances—Tastee Treats forewent that benefit when it relinquished its leasehold in the property and covered building.[4] To allow recovery of the cost of the Dairy Queen building or require construction of a replacement would permit a windfall recovery for Tastee Treats at the expense of USF&G. Such a result would be contrary to West Virginia public policy. *See Fire Ass'n of Phila.*, 42 S.E.2d at 716 . For the foregoing reasons, USF&G's motion for summary judgment is **GRANTED** as it relates to damages for the Dairy Queen building's demolition or replacement under the Policy.

### B. *Loss of Business Income*

The Policy's "Business Income" provision requires USF&G to pay "the actual loss of 'business income' [Tastee Treats] sustain[ed] due to the necessary suspension of [its] 'operations' during the 'period of restoration.'" (Policy at 9.) "Business income" is defined as "net income . . . that would have been earned or incurred if no physical loss occurred; and . . . continuing normal operating expenses incurred, including payroll." (*Id.* at 34.) "Operations" means "business activities occurring at the described premises." (*Id.* at 35.) The "period of restoration" begins "immediately after the time of direct physical loss . . . caused by or resulting from any Covered Cause of Loss at the described premises" and ends on the earlier of the "date when the property

---

[4] The settlement agreement and release indicates that another party, Structured Resources, Inc., is responsible for any future demolition and debris removal associated with the Dairy Queen. (Docket 151-1 at 3.) The agreement further states that any lease in the property, presumably extending to the buildings constructed on the leased property, is terminated upon execution of the agreement. Nowhere in its responsive memoranda does Tastee Treats dispute that it relinquished its ownership interest in the Dairy Queen building.

10

should be repaired" or the "date when business is resumed at a new permanent location."[5] (*Id.*) The Policy imposes an additional limitation on Business Income recovery: "We will only pay for loss of 'business income' that takes place within the Covered Time Period shown in the Property Coverage Part Declarations, after the date of direct loss." (*Id.* at 10.) The stated period in the Policy is 12 months.[6] (Declarations at 1.)

Thus, insofar as Tastee Treats' loss of business income was caused by "suspension" of its operations on the premises and the loss of business income occurred within 12 months of the loss, it is entitled to damages under this provision of the Policy. The interpretive question before the Court is whether the term "suspension," as used in the Policy, requires full cessation of business or simply reduced business volume within the 12-month Covered Time Period. Resolution of this issue is dispositive on the availability of lost business income damages because Tastee Treats did not fully cease business operations until at least March of 2008, well outside the Covered Time Period under the Policy.[7]

As a general rule, the language in an insurance policy should be given its plain, ordinary meaning. *See Boggs v. Camden-Clark Mem. Hosp. Corp.*, 693 S.E.2d 53, 57-58 (W. Va. 2010). Although the phrase "necessary suspension of . . . operations" is not defined in the Policy, it is generally understood to connote a total cessation of business activity. *See, e.g.*, *Brand Mgmt., Inc.*

---

[5] Despite this definition, USF&G is arguing that there was no "period of restoration" in this case because no repairs were undertaken to remedy the damage to the building. (Docket 85 at 14.)

[6] Another provision of the policy, Section I.A.4.b.(2), provides additional coverage for "Extended Business Income" lost in the 45 days immediately following recommencement of business operations. However, since there was no cessation and recommencement of business operations in this case, that provision does not apply.

[7] Plaintiff has produced receipts detailing drive-thru sales from 2002 through February 2008.

*v. Md. Casualty Co.*, No. 05-cv-2293, 2007 WL 1772036, at *3 (D. Colo. June 18, 2007); *see also Am. States Ins. Co. v. Creative Walking, Inc.*, 16 F. Supp. 2d 1062, 1065 (E.D. Mo. 1998); *Home Indem. Co. v. Hyplains Beef, L.C.*, 893 F. Supp. 987, 991 (D. Kan. 1995). The definition of "suspend" is variously "to cause to stop temporarily" or "to set aside or make temporarily inoperative." Webster's Dictionary 135 (1978 ed.); *see also* Black's Law Dictionary 696 (3d pocket ed. 2006) (defining "suspension" as "[t]he act of temporarily delaying, interrupting, or terminating something"). Following the plain meaning of the Policy's language, the Court finds that a complete shutdown or cessation of business at the Dairy Queen was required for Tastee Treats to recover lost business income. The parties do not dispute that the Dairy Queen remained at least partially operational during the 12-month period immediately following the claimed loss.[8] Numerous records of continued, although decreased, sales at the Dairy Queen have been submitted to the Court following discovery. As such, given the Court's interpretation of the relevant Policy provision, USF&G's motion for summary judgment is **GRANTED** as it relates to potential lost business income.

### C. Extra Expense

The Policy further requires USF&G to pay necessary "extra expense" Tastee Treats incurred during the "period of restoration" that Tastee Treats would not have incurred had there been no direct physical loss to the building caused by or resulting from a covered loss. (Policy at 11.) "Extra expense," as it relates to this case, is defined as any expense incurred to:

---

[8] The parties cannot agree whether the "loss" for purposes of the Policy occurred when a Tastee Treats representative first encountered the collapsed culverts in March 2006 or when the claim was first filed with USF&G in August 2006. However, as previously stated, there is uncontroverted evidence in the record that the Dairy Queen restaurant remained operational at least through February 2008. Thus, even assuming August 2006 is the appropriate date of "loss," no lost business income is recoverable under the Policy.

    a. To avoid or minimize the suspension of business and to continue "operations";
    . . .
    b. To minimize the suspension of business if [the insured] cannot continue "operations"; and
    c. To repair any Covered Property . . . to the extent it reduces the amount of loss that otherwise would have been payable under section I.A.4.b.

(*Id.* at 35.) Like the Policy's treatment of business income, extra expense payments are limited to expenses incurred during the Covered Time Period—12 months. (*See id.* at 9.) In addition to the time limitation, recovery of "extra expenses" expressly contemplates the insured seeking reimbursement for out-of-pocket costs already incurred to keep its business operational or minimize suspension of operations.

 In the Pretrial Order, Tastee Treats claims it is entitled to $18,024.47 in extra expense damages for USF&G's breach of the Policy (Docket 73 at 11.) Tastee Treats' trial exhibits contain receipts that detail various repairs to the building and parking lot. Additionally, deposition testimony of Jerry Bartoe, Tastee Treats' president, indicates that $15,800 was paid to underpin the building and provide temporary stabilization sometime in 2006. (Docket 46-1 at 11-13.) Viewed in the light most favorable to Tastee Treats, these damages may conceivably fall within the Policy's extra expense provision.[9] At this time, the Court is unable to conclude that USF&G is entitled to summary judgment regarding the extra expense coverage under the Policy, and consequently, USF&G's motion for summary judgment is **DENIED** as it relates to potential extra expense damages.[10]

---

[9] USF&G has even indicated in various briefs submitted to the Court that the $15,800 expended to underpin the Dairy Queen building is covered under some provision of the Policy, although Tastee Treats makes no specific claim for that sum.

[10] According to Tastee Treats, USF&G is required to pay only "up to its $50,000 limit to cover
                        (continued...)

### D. Hayseeds *Damages for Aggravation and Inconvenience*

USF&G also seeks summary judgment regarding certain damages Tastee Treats claims under West Virginia's *Hayseeds* case. *Hayseeds* holds that, in cases where a policyholder sues his own insurer over a property damage claim and substantially prevails, the insurer may be held liable for consequential damages flowing from any delay in payment, certain quasi-compensatory damages such as aggravation and inconvenience, the policyholder's reasonable attorney fees, and possibly punitive damages. *See Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73, 80-81 (W. Va. 1986). An insured "substantially prevails" in a property damage suit against his insurer when the action is settled for an amount equal to or greater than that claimed by the insured prior to commencement of the lawsuit. Syl. pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647 (W. Va. 1990); *Thomas v. State Farm Mut. Auto. Ins. Co.*, 383 S.E.2d 786, 790 (W. Va. 1989) ("The phrase 'substantially prevails' refers to a comparison of the judgment obtained by the insured with the status of the property damage claim at the time negotiations broke down."). In its motion for summary judgment, USF&G plainly concedes that, because the Court found coverage under the Policy, Tastee Treats substantially prevailed as required by *Hayseeds*. (Docket 87 at 29-31.)

Nonetheless, USF&G argues that Tastee Treats cannot recover damages for aggravation and inconvenience. In support of its argument, USF&G cites *Hayseeds* itself, in which West Virginia Supreme Court of Appeals stated:

> [I]n allowing an award for aggravation and inconvenience, we do not intend that punitive damages be awarded under another sobriquet. For example, a large

---

[10](...continued)
expenses that are necessary to avoid the shut down of the Dairy Queen restaurant." (Docket 112 at 5.) Counsel has represented to the Court that $50,000 has already been paid by USF&G under the Policy. Thus, not only the issue of whether there have been covered extra expenses incurred, but also in what amount and whether the limits have been paid, remain at issue.

14

> corporation with an in-place, organized collective intelligence that must litigate a claim for several years may suffer substantial economic loss but little aggravation and inconvenience. On the other hand, a family of five that is required to live for four years in a trailer because an insurance company has declined to pay the fire policy on their $200,000 house suffers little net economic loss but an enormous degree of aggravation and inconvenience.

352 S.E.2d at 80. From this excerpt, USF&G apparently contends that, as a matter of West Virginia law, corporations are unable to recover *Hayseeds* damages for aggravation and inconvenience caused by an insurer's failure to pay an insurance claim. Backpedaling somewhat, USF&G then states that "it is a challenging issue under West Virginia law whether, how and to what extent a corporation can actually suffer . . . aggravation or inconvenience." (Docket 87 at 37.) The Court disagrees.

The above-quoted language from *Hayseeds* plainly indicates that an award of damages to a corporate entity for aggravation, annoyance, and inconvenience is contemplated by West Virginia law. *See N. Am. Precast, Inc. v. Gen. Cas. Co. Of Wis.*, No. 3:04-cv-1307, 2009 WL 3017815, at *12 (S.D. W. Va. Sept. 15, 2009) (finding that corporations may recover damages for aggravation and inconvenience). The *Hayseeds* court held that, generally, a corporation suffers less aggravation and inconvenience from delayed insurance payments than an individual. *Hayseeds* did not hold that corporations *categorically may not* suffer aggravation and inconvenience damages. In fact, the plain language of *Hayseeds* states that, "a large corporation . . . may suffer . . . little aggravation and inconvenience," *Hayseeds*, 352 S.E.2d at 80, but aggravation and inconvenience damages nonetheless. That Tastee Treats is not a "large corporation with an in-place organized collective intelligence," bolsters the notion that *Hayseeds* damages for aggravation and inconvenience may be available in this case. Because the Court finds that Tastee Treats is not foreclosed from recovering

15

damages for aggravation and inconvenience as a matter of West Virginia law, USF&G's motion for summary judgment is **DENIED** as it relates to those damages.

### E. Attorneys' Fees

Tastee Treats is also seeking reasonable attorneys' fees under the *Hayseeds* case. 352 S.E.2d at 80 ("[W]henever a policyholder must sue his own insurance company over any property damage claim, and the policyholder substantially prevails in the action, the company is liable for the payment of the policyholder's reasonable attorneys' fees."). In its initial motion for summary judgment, filed on August 20, 2008, USF&G concedes that "plaintiff is entitled to an award of 'reasonable attorneys' fees,' at least fees incurred to date." (Docket 87 at 31.) USF&G then goes on to discuss the appropriate method for calculating reasonable attorneys' fees under *Hayseeds*. Because the parties agree that Tastee Treats is able to recover its reasonable attorneys' fees incurred in pursuit of the Court's July 21, 2008, order finding coverage under the policy, USF&G's motion for summary judgment on the unavailability of attorneys' fees is **DENIED**. The amount of attorneys' fees will be calculated by the Court at a later date, as required by West Virginia precedent. *See Richardson v. Ky. Nat'l Ins. Co.*, 607 S.E.2d 793, 801 (W. Va. 2004) ("[T]he amount of the attorney's fee is to be determined by the circuit judge and not by a jury.").

### F. Punitive Damages and Bad Faith Damages

USF&G seeks summary judgment on the issues of punitive damages and bad faith damages. As to punitive damages, USF&G argues that Tastee Treats cannot demonstrate actual malice on the insurer's part, as required by West Virginia law. To succeed on its punitive damages claim, Tastee Treats must show that USF&G "actually knew that [Tastee Treats'] claim was proper, but willfully, maliciously and intentionally" denied the claim. *McCormick v. Allstate Ins. Co.*, 505 S.E.2d 454,

459 (W. Va. 1998). It is clear from *Hayseeds* itself that the West Virginia Supreme Court of Appeals intended summary judgment on the issue of punitive damages to be commonplace:

> By "actual malice" we mean that the [insurance] company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant [insurance company], . . . [u]nless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury.

*Berry v. Nationwide Mut. Fire Ins. Co.*, 381 S.E.2d 367, 374 (W. Va. 1989) (quoting *Hayseeds*, 352 S.E.2d at 80-81). Nonetheless, to grant summary judgment on punitive damages at this stage of the litigation would be premature. The Court previously denied Tastee Treats' request to pursue "bad faith" discovery, which may reveal evidence not only of bad faith, but also actual malice by USF&G. The Court will now permit Tastee Treats to pursue such discovery, and accordingly, USF&G's motion for summary judgment is **DENIED** as it relates to both punitive damages and bad faith damages.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** USF&G's Motion in Limine and/or for Judgment as a Matter of Law [Docket 86] and USF&G's Supplemental Motion in Limine and/or for Judgment as a Matter of Law [Docket 150]. Deadlines and a trial date on all remaining issues will be set in a separate order.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: November 29, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE