## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

TASTEE TREATS, INC.,

                Plaintiff,

v.                                                                  CIVIL ACTION NO. 5:07-cv-00338

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant United States Fidelity and Guaranty Company's ("USF&G") Motion to Dismiss for Failure to Prosecute [Docket 172] and Renewed Motion for Summary Judgment [Docket 170]. For the reasons set forth below, both motions are **GRANTED**, and this case is retired from the Court's docket.

### *I. FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Tastee Treats, Inc., ("Tastee Treats") is a West Virginia corporation that owned and operated a Dairy Queen restaurant in Huntington, West Virginia. The Dairy Queen ceased operations in March 2008 due to the collapse of two 96-inch culverts that ran beneath the building sometime in early 2006. According to experts from both sides, the culvert collapse caused dirt between the culverts and the Dairy Queen restaurant to fall into a void once occupied by the culverts. As a

result, the area beneath the Dairy Queen became unstable, and damage to the building and surrounding parking lot occurred.

On August 2, 2006, Tastee Treats filed an insurance claim with USF&G for property damage and business interruption pursuant to the insurance policy in existence between the parties ("the Policy"). After an investigation, USF&G denied Tastee Treats's claim based on certain language in the Policy which it believed to exclude insurance coverage under these circumstances. Tastee Treats disagreed with that interpretation of the Policy, and on April 27, 2007, it filed this action in the Circuit Court of Raleigh County, West Virginia. USF&G removed the action to this Court on May 24, 2007, based on diversity of citizenship. On July 21, 2008, the Court entered partial summary judgment for Tastee Treats and held that damage to the Dairy Queen building caused by the culvert collapse is covered under the Policy. (Docket 78 at 10-11.) Although several issues remained in dispute, on January 7, 2009, the Court stayed this action pending resolution of a parallel state court case. Anticipating a settlement in the state court case, the parties sought reinstatement of this action, and the stay was lifted on July 2, 2010.

At that time, the Court ordered renewed summary judgment briefing from the parties, and on November 29, 2010, entered partial summary judgment for USF&G on several of the remaining issues. In particular, the Court found that the Policy did not cover demolition and replacement costs or lost business income sought by Tastee Treats, and it thereby foreclosed such recovery as a matter of law. (Docket 159 at 5-12.) In that same order, the Court denied summary judgment on the issues of extra expense damages under the Policy, the availability of damages under West Virginia's *Hayseeds* precedent, and the availability of attorneys' fees.

At the specific request of Tastee Treats, the Court also permitted additional discovery to seek information relevant to bad faith or punitive damages. Following a telephonic status conference on December 3, 2010, the Court entered an amended scheduling order instructing the parties to complete all discovery requests related to bad faith and punitive damages by December 21, 2010, and all such depositions by February 4, 2011. (Docket 162.) On December 20, 2010, Tastee Treats sent a letter to the Court requesting additional time to make expert disclosures related to bad faith damages. The Court granted Tastee Treats's request and directed that all such expert disclosures must be made no later than January 28, 2011. (Docket 163.) In lieu of meeting that deadline, Tastee Treats filed a motion to extend the deadline, which the Court granted, and the deadline was revised to February 4, 2011. No further extension of any deadline was sought by either party or granted by the Court.

On February 8, 2011, USF&G filed a second Renewed Motion for Summary Judgment, arguing that the record contains insufficient evidence to show that Tastee Treats is owed extra expense damages under the Policy or suffered any *Hayseeds* damages at all. (Docket 170 at 2-3.) Tastee Treats did not file a response to USF&G's second Renewed Motion for Summary Judgment. One month later, on March 8, 2011, USF&G filed a Motion to Dismiss this action because Tastee Treats failed to prosecute its case or comply with the Court's scheduling order and revisions thereto. In its motion, USF&G points out that not only has Tastee Treats conducted no additional discovery, for which the Court provided Tastee Treats plenty of additional time; it also failed to schedule a settlement meeting and submit its portion of the proposed pretrial order, as required by the Court's previous scheduling order. Tastee Treats does not deny its dilatory conduct, nor can it.

On March 16, 2011, the Court held a status conference in this matter to confer with the parties. At that status conference, plaintiff's counsel informed the Court that his prolonged disobedience with the Court's scheduling orders was due to his involvement as a scholastic wrestling coach. The Court vacated its current scheduling order and instructed the plaintiff's counsel to file with the Court his requested relief, whatever that may be under the circumstances. Despite the Court's instruction, Tastee Treats filed nothing. On April 4, 2011, the Court entered an order instructing Tastee Treats to show cause why this case should not be dismissed within ten days. Tastee Treats finally responded on April 14, 2011.

## II. MOTION TO DISMISS FOR FAILURE TO PROSECUTE

### A. Applicable Standard

Rule 41(b) of the Federal Rules of Civil Procedure provides, in pertinent part: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Unless otherwise noted, a dismissal pursuant to Rule 41(b) constitutes a dismissal with prejudice. *Id.* Courts are to consider four factors in determining whether or not to grant a motion to dismiss brought pursuant to Rule 41(b): (1) the degree of personal responsibility of the plaintiff; (2) the amount of prejudice caused the defendant; (3) the existence of a "drawn out history of deliberately proceeding in a dilatory fashion"; and (4) the existence of a sanction less drastic than dismissal. *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982) (per curiam). These four factors are not to be applied as a rigid, formulaic test, but rather serve to assist the court, along with the particular circumstances of each case, in

determining whether or not to grant a Rule 41(b) motion. *See Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989).

  *B. Discussion*

  The first factor, which concerns the degree of personal accountability of the plaintiff, militates against dismissal, but only slightly. As Tastee Treats notes in its memorandum, its repeated failure to comply with Court orders was directly attributable to counsel's disregard for deadlines contained therein. It was not due to the personal actions of the client, as would be, for example, repeatedly skipping a scheduled deposition. Despite this argument, however, it is not apparent to the Court how Tastee Treats was unaware of its attorney's blatant disregard for the Court's orders for a period of nearly six months, and, in fact, Tastee Treats never asserts that it was unaware of the prolonged inaction in the case.

  The second factor, which concerns the amount of prejudice facing the defendant due to the non-compliance, weighs in favor of sanction. USF&G has suffered the expense of retaining counsel for the past six months, including attending two extraneous scheduling conferences,[1] responding to apparently frivolous discovery extensions, preparing for a trial that Tastee Treats had no intention of prosecuting as scheduled,[2] and moving the Court for various relief related to Tastee Treats's neglect. Such costs are hefty and certainly prejudicial to USF&G, and the Court is wary of imposing a sanction less severe than dismissal for fear of repetition.

---

[1] Both were caused by Tastee Treats's own actions, either in seeking additional bad faith discovery, which ultimately amounted to frivolity, or to confront Tastee Treats about its failure to meet Court ordered deadlines.

[2] Trial was set in this matter for March 29, 2011. The Court vacated the pretrial conference and trial on March 14, 2011, after USF&G's counsel informed the Court that the case was not ready to proceed to trial.

Third, the existence of a history of deliberately proceeding in a dilatory fashion is overwhelming in this case. From the time the Court entered partial summary judgement for USF&G on November 29, 2010, until the present, Tastee Treats and its counsel have done absolutely nothing to move this case forward. Instead, during those six months, Tastee Treats has requested two discovery deadline extensions and filed only one document—and then, only in response to the Court's notice of impending dismissal. At the same time, Tastee Treats disregarded several deadlines in the Court's standing scheduling order. It also appears that neither USF&G nor the Court have any evidence that Tastee Treats conducted the bad faith discovery it requested from the Court and for which it obtained multiple extensions. Thus, Tastee Treats's only appearances in this case for half a year have been to seek additional time to conduct apparently non-existent discovery and to make excuses for its dilatory behavior. Such conduct is unacceptable, and it is clear to the Court that although a sanction less drastic than dismissal with prejudice is available, none will induce Tastee Treats to proceed in a timely and professional manner.

For these reasons, USF&G's Motion to Dismiss for Failure to Prosecute or Comply with Scheduling Order [Docket 172] is **GRANTED**, and this case is **DISMISSED** from the Court's docket.

### III. MOTION FOR SUMMARY JUDGMENT

In the alternative, it is apparent to the Court that summary judgment is appropriate based on the record as it currently stands.

*A. Applicable Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *Am. Legion Post v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A mere scintilla of proof, however, will not suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celetex Corp.*, 477 U.S. at 323. The moving party bears the burden to show that there is no genuine issue of material fact, and the court "must assess the evidence as forecast in the documentary materials . . . in the light most favorable to the party opposing the motion." *Charbonnages de Fr. v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

*B. Discussion*

Following the Court's November 29, 2010, summary judgment order, only three issues remain outstanding in this case: (1) the availability and amount of extra expense damages under the Policy, (2) the availability and amount of damages under West Virginia's *Hayseeds* case for aggravation and inconvenience and net economic losses, and (3) the availability of heightened or punitive damages for bad faith or intentional misconduct on the part of USF&G. In its brief, USF&G argues that there is insufficient evidence in the record to establish that Tastee Treats is entitled to any damages in excess of those amounts already paid by USF&G. For the reasons that follow, the Court agrees.

*(1) Extra Expense Damages*

The Policy requires USF&G to pay necessary "extra expense" Tastee Treats incurred during the "period of restoration" that Tastee Treats would not have incurred had there been no direct physical loss to the building caused by or resulting from a covered loss. (Policy at 11.) "Extra expense," as it relates to this case, is defined as any expense incurred to:

> a. To avoid or minimize the suspension of business and to continue "operations";
> . . .
> b. To minimize the suspension of business if [the insured] cannot continue "operations"; and
> c. To repair any Covered Property . . . to the extent it reduces the amount of loss that otherwise would have been payable under section I.A.4.b.

(*Id.* at 35.) Extra expense payments are limited to expenses incurred during the "Covered Time Period"—twelve months. (*See id.* at 9.) In addition to the time limitation, recovery of "extra expenses" expressly contemplates the insured seeking reimbursement for out-of-pocket costs already incurred to keep its business operational or minimize suspension of operations.

In the Pretrial Order, Tastee Treats claims it is entitled to a total of $18,024.47 in extra expense damages under the Policy. (Docket 73 at 11.) Tastee Treats's trial exhibits contain receipts that detail various repairs to the Dairy Queen building and parking lot. Among the evidence is the deposition testimony of Jerry Bartoe, Tastee Treats's president, which indicates that $15,800 was paid by Tastee Treats to underpin the Dairy Queen building and provide temporary stabilization sometime in 2006. (Docket 46-1 at 11-13.) A letter from Tastee Treats's lead counsel, David Hart, to USF&G indicates, however, that the sum paid for the building stabilization was $15,000. (Docket 169-2 at 4.) Mr. Hart's letter also states that "Tastee Treats has paid various remedial expenses since August 2006 to the present [August 18, 2008] totaling $2,019.06." (*Id.* at 5.) Mr. Hart's letter,

8

therefore, claims a total of $17,019.06 in extra expense damages, not $18,024.47, the figure put forth in the pretrial order.

In response to this information, along with its latest summary judgment brief, USF&G submitted an affidavit from its lead counsel, Avrum Levicoff, stating that USF&G reimbursed Tastee Treats $15,000 for the underpinning expenses in August 2008. (Docket 169 at 2.) The same affidavit states that USF&G requested a more detailed accounting of the $2,019.06 to determine whether the Policy indeed covered that sum as an extra expense. USF&G maintains that no further details on that amount were provided, and the Court is aware of none on the record or otherwise. Mr. Levicoff's affidavit also states that USF&G paid over $35,000 to Tastee Treats for minor building repairs to keep the Dairy Queen operational. According to USF&G, the building repairs were never conducted and the $35,000 was never refunded to USF&G, thereby amounting to a windfall recovery for Tastee Treats. (*Id.*) Tastee Treats failed to respond to USF&G's summary judgment motion, and it therefore has made no response to USF&G's assertions.

As stated in the Court's November 29, 2010, opinion, under the Policy, only out-of-pocket expenses within twelve months of the loss can be considered extra expenses. After reviewing the evidence, the Court concludes that only $15,000, which was paid to McCloy Construction Company ("McCloy") for the purpose of stabilizing the Dairy Queen building in September of 2006, qualifies as extra expense under the Policy. This conclusion rests on a number of considerations. First, the record reveals that although McCloy appears to have charged $15,800 for the underpinning, Mr. Hart's demand letter unequivocally states that Tastee Treats paid only $15,000 out of pocket. Second, there exists no detailed accounting of the additional $2,019.06 Mr. Hart sought in the demand letter. Without information or evidence regarding the time frame and substance of that

9

expense, no jury could possibly award it as extra expense under the Policy. Third, there is absolutely no explanation of the discrepancy between the extra expense amount sought in Mr. Hart's demand letter ($17,019.06) and the Pretrial Order ($18,024.47). Without evidence of when or on what the additional $1,005.41 was spent, no jury could award that sum as extra expense damages as a matter of law. Thus, the evidence in the record as it currently stands establishes that Tastee Treats may recover at most $15,000 in extra expense under the Policy, but it has already received $50,000 from USF&G in satisfaction of amounts owed under the Policy. Summary judgment is therefore **GRANTED** in favor of USF&G on the issue of extra expense.

### *(2) Hayseeds Damages*

USF&G also seeks summary judgment regarding certain damages Tastee Treats claims under West Virginia's *Hayseeds* case. *Hayseeds* holds that, in cases where a policyholder sues his own insurer over a property damage claim and substantially prevails, the insurer may be held liable for consequential damages flowing from any delay in payment, certain quasi-compensatory damages such as aggravation and inconvenience, the policyholder's reasonable attorney fees, and possibly punitive damages. *See Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73, 80-81 (W. Va. 1986). An insured "substantially prevails" in a property damage suit against his insurer when the action is settled for an amount equal to or greater than that claimed by the insured prior to commencement of the lawsuit. Syl. pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647 (W. Va. 1990); *Thomas v. State Farm Mut. Auto. Ins. Co.*, 383 S.E.2d 786, 790 (W. Va. 1989) ("The phrase 'substantially prevails' refers to a comparison of the judgment obtained by the insured with the status of the property damage claim at the time negotiations broke down.").

In its November 29, 2010, opinion, the Court held that, as a matter of West Virginia law, corporations are not precluded from recovering *Hayseeds* damages. In its current motion for summary judgment, USF&G contends that there is no evidence of any *Hayseeds* damages in the record, and therefore, no jury could award Tastee Treats such damages. The Court is aware of no evidence in the record to establish aggravation and inconvenience damages on the part of Tastee Treats as a corporation.

Likewise, there is no evidence of damages flowing from any delay in payment on the part of USF&G, as opposed to damages flowing from the casualty loss at issue in this case. As USF&G correctly points out, the deposition testimony and statistical analysis of Tastee Treats's economic expert focus on a comparison of net income before and after the loss. Such a comparison utterly fails to distinguish between damages flowing from the loss itself and any damages caused by a delayed insurance payout. Furthermore, USF&G persuasively argues that there is no evidence of any damages caused by a delayed payout in this case. Stated bluntly, the amount that Tastee Treats will ultimately recover under the Policy is so minimal ($15,000 for extra expenses) that as a matter of law, no *Hayseeds* damages based on a delay in the payment may be awarded. In addition, Tastee Treats has never argued, by expert testimony or otherwise, *when* USF&G should have reasonably paid the sums owed under the policy. Without such information, *Hayseeds* damages for delay in payment cannot conceivably be awarded. For these reasons, summary judgment is **GRANTED** in favor of USF&G on the issue of all *Hayseeds* damages sought in the motion.

### *(3) Bad Faith and Punitive Damages*

Finally, USF&G seeks summary judgment on the issue of bad faith and punitive damages. As to punitive damages, USF&G argues that Tastee Treats cannot demonstrate actual malice on the

insurer's part, as required to recover punitive damages under West Virginia law. To succeed on its punitive damages claim, Tastee Treats must show that USF&G "actually knew that [Tastee Treats's] claim was proper, but willfully, maliciously and intentionally" denied the claim. *McCormick v. Allstate Ins. Co.*, 505 S.E.2d 454, 459 (W. Va. 1998). It is clear from *Hayseeds* itself that the West Virginia Supreme Court of Appeals intended summary judgment on the issue of punitive damages to be commonplace:

> By "actual malice" we mean that the [insurance] company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant [insurance company], . . . [u]nless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury.

*Berry v. Nationwide Mut. Fire Ins. Co.*, 381 S.E.2d 367, 374 (W. Va. 1989) (quoting *Hayseeds*, 352 S.E.2d at 80-81).

Following the Court's November 29, 2010, opinion granting in part USF&G's previous motion for summary judgment, Tastee Treats was permitted an abbreviated discovery schedule to pursue evidence of USF&G's alleged bad faith or malice in denying the insurance claim. There is no evidence that Tastee Treats conducted any discovery in the six months that have passed since that order, and, as such, the record remains devoid of evidence regarding USF&G's alleged bad faith or malice. Without evidence of bad faith or malice, no punitive damages may be awarded as a matter of law. In addition, the Court notes that the issue of coverage was indeed a "close call," which, in the absence of evidence to the contrary, indicates that USF&G did not act in bad faith. For these reasons, summary judgment is **GRANTED** to USF&G on the issue of bad faith and punitive damages.

## IV. CONCLUSION

For the forgoing reasons, USF&G's Motion to Dismiss for Failure to Prosecute [Docket 172] and Renewed Motion for Summary Judgment [Docket 170] are both **GRANTED**, and this case is hereby retired from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 7, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE